## Case No. 9,197.

### The MARY ANN GUEST.

[1 Olc. 498.] [1]

District Court, S. D. New York.    March, 1847.[2]

SALE—BILL OF LADING—ENDORSEMENT — ACTION AGAINST CARRIER—DEFENCE—STOPPAGE IN TRANSITU—DUTY OF CARRIER.

1. By the endorsement, for a valuable consideration, of a bill of lading of goods already at sea, the endorsee becomes, as against all the world, the owner of the goods, free from any equities subsisting between the consignor of the goods and the consignee.

[See Balderston v. Manro, Case No. 793.]

2. It is no defence to an action by such endorsee of a bill of lading against the vessel, for damages for the non-delivery of the goods, to show that immediately on the arrival of the goods at the port of consignment they were seized in an action of replevin at suit of the consignor, he claiming a right of stoppage in transitu on the ground of insolvency of the consignee.

3. The master of the vessel had the right to hold the goods against the sheriff; and should have interposed in the replevin suit, and contested the claim to take the goods from his possession.

[Cited in The M. M. Chase, 37 Fed. 711.]

This was an action in rem for the recovery of $1,050, upon a bill of lading assigned to the libellant, Townsend N. Underhill. He alleges in his libel that Whitney, Schott & Co., merchants of Philadelphia, on the 18th of February, 1846, shipped on board the said schooner, then lying in Philadelphia and bound to New-York, twelve cases of merchandise, marked and numbered as in the bill of lading, to be delivered in good order to Mr. W. C. Noyes, or his assigns, he or they paying freight at the rate of three cents per foot— five dollars forty cents in all; which bill of lading was duly executed and delivered to the said W. C. Noyes. He further alleges that said schooner arrived with said goods on board in New-York on or about the 27th of February aforesaid. He further alleges that on or about the 19th of said February he advanced to the said Noyes, $1,050, on the faith of one of said bills of lading, then in the possession of said Noyes, who then endorsed and transferred to him said bill of lading. That after the arrival of said vessel in New-York he went on board of her by his agent, and demanded the twelve cases of merchandise, and was informed by the mate, the captain being absent, that they had been delivered to some other person. He further alleges that he was ready and willing to pay the freight. He further avers that he is informed and believes that said merchandise was delivered to the sheriff of the city and county of New-York upon a writ of replevin, issued at the instance of Whitney, Schott & Co. against said W. C. Noyes; that the damage to said libellant by the non-delivery of said merchandise has been $1,050, and the interest, commission and charges thereon. Wherefore he prays process of attachment against said schooner, and that she be sold, &c. The respondent, for answer to said libel, admits the shipment of said merchandise, and the execution and delivery of the bills of lading as alleged, and avers that Whitney, Schott & Company caused to be issued from the supreme court of the city of New-York a writ of replevin, in which it was alleged that W. C. Noyes unjustly had taken and detained the said merchandise, and that by virtue of said writ the sheriff of said county, on the 24th of February, entered on board of said vessel, and there seized and took and carried away from said vessel said twelve boxes of merchandise. He denies that any loss or damage was caused to libellant by any act of the master of said schooner; and says that said merchandise could not be delivered for the reasons above set forth. Wherefore he prays that the libel be dismissed. The bill of lading and its execution was admitted. It was also in proof that on the 19th of February, the libellant was applied to by Noyes, the purchaser and consignee of the goods, for $1,050, which he advanced; that the bill of lading was endorsed by Noyes and delivered to libellant at the time he advanced him this money; that as far as the witness, who was in the employ of Noyes, knew, Noyes was in fair standing for solvency. Libellant had been in the habit of advancing him money. It was also proved that a demand had been made for the goods, and the reply of the mate of the vessel was, that they had already been delivered to the sheriff, under a writ of replevin. It was also proved that the libellant offered to pay the freight upon the merchandise.

Mr. Nash, for libellant.
Mr. Sanxay, for claimants.

---

[1] [Reported by Edward R. Olcott, Esq.]
[2] [Affirmed in Case No. 9,196.]

BETTS, District Judge. This was an action for the recovery of $1,050, with interest upon the same, money advanced by libellant to the consignee of certain packages of goods shipped by him from Philadelphia to New-York. The consignee, desirous of raising that amount of money, applied to the libellant for the same upon the security of the bill of lading, which, upon the loan being made, was duly endorsed and delivered to him. There is nothing in the evidence to impugn the fairness of the transaction between the parties, and although it appears that the purchaser of the goods was probably insolvent at the time of the sale of the goods, it does not appear that the libellant was aware of the fact.

There is no doubt that if the purchaser had fraudulently induced the seller to part with his goods by representing that he was solvent when the fact was otherwise, the vendor would have a right, by a stoppage in transitu, to reclaim the goods. Such fraudulent purchase, as between the vendor and vendee, would not divest the owner of his right and title to the goods. But when the vendor has, for a valuable consideration, parted with the possession of the goods, and third parties have innocently and in good faith purchased them from the vendee, the title of such third person cannot be disturbed by any equities which the original owner might have possessed. 6 Metc. [Mass.] 68.

For the convenience of commercial transactions, bills of lading have been allowed to become negotiable instruments: and upon the faith of them it is usual and customary for commission merchants to make advances. By such endorsement of the bill of lading the holder of it becomes, as against all the world, the owner of the goods. Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 385; Nathan v. Giles, 5 Taunt. 558. The bill of lading transfers the property to the consignee; and it seems to be conceded that the assignment of it by the consignee, by way of sale or mortgage, will pass the property, though no actual delivery of the goods be made, provided they were then at sea. 2 Kent, Comm. 549; McNeill v. Glass, 1 Mart. [N. S.] 261.

It is no defence to the claim of the consignee, that the goods have been attached or seized by virtue of any judicial process. The contract of the carrier is, that he will deliver the goods in good order and condition to the shipper or to his assigns, (the dangers of the seas only excepted.) He thus guarantees to protect the right of possession of the shipper and his assigns. He had the right to the possession of the goods as against the sheriff, and could have interposed in the replevin suit, and had an immediate trial of the right of the sheriff to take them from his possession. 2 Rev. St. p. 432, §§ 13, 16, 17.

The libellant is, upon the proofs and the law, entitled to a decree in his favor for the value of the goods claimed by him and his costs, and the cause must be referred to a commissioner to report upon such value.

This case was appealed and the decree affirmed upon the grounds of the decision here reported. [Case No. 9,196.]